## UNITED STATES v. GRANT.

### (Circuit Court, D. Oregon. March 1, 1893.)

### No. 1,984.

1. SEAMEN—DESERTERS—PENALTY FOR HARBORING—EVIDENCE.

Upon an information for harboring deserting seamen it appeared that defendant was apprised of the shipping contract of the seamen, and of their coming by steamer to defendant's town for the purpose of embarking with their employer; that defendant induced them to come ashore and disregard their contract, guarantied delivery of their baggage, kept them for some time at his boarding house, and, when some of them were arrested as deserters, gratuitously furnished them with legal assistance. Defendant was engaged in the business of furnishing vessels with sailors, and had had trouble in that respect with the master of the vessel employing the deserters. *Held,* that the evidence was sufficient to show a harboring, within the meaning of Rev. St. § 4601.

2. SAME.

The penalty of the statute being denounced against "harboring and secreting" seamen, defendant was none the less guilty because there was no concealment of his acts.

3. SAME—PAROL EVIDENCE OF EMPLOYMENT—SHIPPING ARTICLES.

The fact that the shipping articles, having been carried to sea, were not produced to show the employment of the seamen in question, was immaterial, in view of the testimony of the seamen that they were so employed, and of the admission of the defendant that he knew they had signed the articles.

4. SAME—PROCEDURE—INFORMATION—WAIVER.

Under Rev. St. § 4610, an information as well as an action at law will probably lie for the recovery of the penalty for harboring deserting seamen; but, even if information is not the proper procedure, an objection on that ground comes too late when first raised at the final hearing.

At Law. Information against Peter Grant for harboring and secreting deserting seamen. Judgment for the prescribed penalty.

F. P. Mays, for the United States.

Jas. F. Watson, for defendant.

GILBERT, Circuit Judge. An information was filed against the defendant charging him with harboring seamen, in contravention of section 4601, Rev. St. That section provides as follows:

"Sec. 4601. Whenever any person harbors or secretes any seaman belonging to any vessel, knowing him to belong thereto, he shall be liable to pay ten dollars for every day during which he continues so to harbor or secrete such seaman; recoverable, one half to the person prosecuting the same, the other half to the United States."

The evidence shows that five seamen signed shipping articles at San Francisco to go on board the Invergarry, a British vessel, on her outward voyage from the port of Astoria. They were transported by the steamship Queen from San Francisco to Astoria. The defendant was the keeper of a sailor boarding house in Astoria,

and was in the business of furnishing seamen to vessels at the port of Astoria. He had had some trouble with the master of the Invergarry about the terms on which men were to be furnished for that vessel, and he was apprised of the fact that five seamen were coming by the steamer Queen to join the Invergarry. On the arrival of the Queen at Astoria, and before she was brought alongside the dock, the defendant, and certain others acting in concert with him, entered into a conversation with the seamen for the purpose of inducing them to come ashore, and to disregard their agreement to go on board the Invergarry. The defendant personally guarantied them that he would see that they got their baggage. The men went ashore, and they all accompanied the defendant to a saloon. From there one of the men went into the country back of Astoria, where he remained about two weeks, and then returned to the defendant's boarding house, where he remained until January 4, 1893. Two of the others went from the saloon to the defendant's boarding house, and remained there until January 4, 1893. Shortly after their arrival at Astoria these two were arrested as deserters from the Invergarry. The defendant thereupon proffered them legal counsel, and informed them that they need not go aboard the Invergarry unless they chose to do so.

The question arises whether by these acts the defendant has harbored or secreted deserting seamen, within the meaning of the statute above quoted. It is contended that, since all of the acts of the defendant were without concealment, he has not incurred the penalty of the statute. Various shades of meaning may be found for the word to "harbor," and, while it may be aptly used to describe the furnishing of shelter, lodging, or food clandestinely or with concealment, it may also, under certain circumstances, be equally applicable to those acts divested of any accompanying secrecy. In the statute under consideration the inhibition is against both harboring and secreting. The intention evidently was to declare unlawful other acts than the mere concealment of deserting seamen. In view of the language used and the evils intended to be corrected by the statute, the reasonable interpretation of its terms would be to hold that the penalty therein provided is denounced, not only against all persons who conceal and secrete deserting seamen, but against all persons who knowingly furnish them food, shelter, or other aid with the intent thereby to encourage them to continue in their violation of law, and to defeat the rights of the master and owners of the vessel. This interpretation is in harmony with the judicial construction applied to these words where they have been found in other statutes. Van Metre v. Mitchell, 2 Wall. Jr. 311; Driskill v. Parish, 3 McLean, 631; Eels v. People, 4 Scam. 498.

There can be no doubt that the acts of the defendant tended to and did encourage and support the seamen in their desertion of the ship. The mere fact that he entertained them as inmates of his boarding house would not of itself constitute a violation of the statute. His other acts, however, disclose his purpose to aid and harbor them in their desertion. He met them at the dock. He

counseled them to disregard the obligation of their shipping articles. He led them away in his company, and finally he furnished the most convincing proof of his purpose by gratuitously engaging legal counsel in their behalf to frustrate the efforts of the master to reclaim them.

It is objected that section 4610 of the Revised Statutes, prescribing the method of the recovery of penalties and forfeitures incurred under section 4601, does not authorize the prosecution of the defendant by information. The method of procedure is not clearly defined in that section. Certain expressions therein used would seem to indicate that the procedure contemplated is an action at law, in the name either of the district attorney or the United States as plaintiff. There are other provisions therein contained which support the view that the proper procedure is by information or indictment. Of the latter class are the clauses declaring that, upon a "conviction," the court shall impose a penalty, and that, upon failure to pay the penalty, the offender shall be committed to prison. I am inclined to believe that, under the language of the statute, either method of procedure would be allowable; and that, even if the procedure adopted in this case is not in all respects such as is contemplated by the statute, an objection upon that ground comes too late if first presented upon the final hearing.

The objection is also made that there was no legal proof that the seamen who were harbored by the defendant belonged to the Invergarry. The shipping articles properly signed by the seamen would undoubtedly be competent evidence of that fact; but, the articles having been carried to sea, the seamen were allowed to testify that they belonged to the Invergarry; that they had signed the shipping articles at San Francisco, and had been brought by steamer to Astoria to go on board that vessel. This evidence, being uncontradicted, was sufficient in itself; but it was supplemented by the admission of the defendant, who testified upon the trial that he knew that those five men belonged to the Invergarry, and had signed to go on her. The defendant harbored two of the men 26 days, and one 12 days. It is the judgment of the court that he pay a penalty of $640.